## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**CASE NO. 0:25-cv-60630-LEIBOWITZ**
**CASE NO. 0:25-cv-60646-LEIBOWITZ**
**CASE NO. 0:25-cv-60647-LEIBOWITZ**
**CASE NO. 0:25-cv-60712-LEIBOWITZ**

**BYOPLANET INTERNATIONAL, LLC**,

     *Plaintiff,*

*v.*

**PETER JOHANSSON** and
**CHARLES GILSTRAP,**

     *Defendant.*

_____/

**BYOPLANET INTERNATIONAL, LLC**,

     *Plaintiff,*

*v.*

**JARRED KNECHT,**

     *Defendant.*

_____/

**BYOPLANET INTERNATIONAL, LLC**
**and RICHARD O'SHEA**,

     *Plaintiffs,*

*v.*

**CHARLES GILSTRAP,**

     *Defendant.*

_____/

1

**RICHARD PATRICK MICHAEL O'SHEA**,

    *Plaintiff,*

v.

**JASON NOVAK,**

    *Defendant.*

_____/

## ORDER

"The integrity of judicial proceedings depends upon the ethical obligations of candor and honesty being strictly observed by all parties." *Liteky v. United States*, 510 U.S. 540 (1994) (Scalia, J., concurring).[1]

Two things: (1) The above statement is absolutely correct. (2) the great Justice Antonin Scalia did not write this anywhere in his Opinion of the Court (not concurring) in *Liteky*. A quick review of the U.S. Reports confirms that. But ChatGPT, with the slick, cool authority of instantly-generated pixels on a screen, declares otherwise. Artificial intelligence, indeed.

The proliferation and availability of artificial intelligence ("AI") tools presents a challenge to the legal profession. Lawyers have duties both to their clients and to the courts to present accurate facts and citations to legal authority. When a lawyer presents false information to a court, that lawyer violates his duties. This case presents an important issue (unfortunately one that is occurring more often): what sanctions should a court impose on a lawyer who repeatedly uses false, fake, non-existent, AI-generated legal authorities in the drafting of complaints, motions, and other filings? Here, Plaintiffs' counsel repeatedly regurgitated such "hallucinated" authority in eight separate but related cases. Four of these eight cases are presently before this Court. After considering the factual record, the relevant legal authority, and the threat this rampant conduct poses to the practice of law and the integrity of judicial proceedings, this Court imposes substantial sanctions.

---

[1]    ChatGPT (July 7, 2025, response to query: "scalia quotes on candor").

## BACKGROUND

### I.      Artificial Intelligence

During a bygone era when dinosaurs roamed the earth and the undersigned was in law school (1998), to research cases a student often had to hold a volume of a legal reporter in one's hands.  To ensure that all cases cited were good law, students and attorneys employed services like Shepard's Citations.  But even in that dark, pre-modern age, stars rose in the distance; online legal sources, such as Westlaw and LexisNexis, came forth to aid lawyers in performing legal research.  You didn't have to be Steve Wozniak to understand that these electronic advancements would revolutionize the practice of law (and much else).  Gone were the days of spending hours in libraries manually searching for a case and Shepardizing to see every case which cited it.

Now, another star rises—AI—with the potential to revolutionize the legal field (and much else) once again.  From Altman to Zuckerberg, we are told that AI has the potential to perform hours of legal research on nearly any topic in seconds.  Large language models like ChatGPT offer the promise to employ AI to perform legal research and even draft legal filings, such as briefs and complaints.

However, AI is not yet a match for an actual litigator.  Employing the euphemism-du-jour, AI regularly "hallucinates" entire cases and "hallucinates" quotations from real cases.  *See* Sara Merken, *AI 'hallucinations' in court papers spell trouble for lawyers*, Reuters, https://www.reuters.com/technology/artificial-intelligence/ai-hallucinations-court-papers-spell-trouble-lawyers-2025-02-18/ (noting AI's "penchant for generating legal fiction in case filings[.]").  This means that when a lawyer asks AI to generate legal research, briefs, or complaints, it may lead to fake cases and/or false quotations that purport to stand for the propositions the lawyer seeks.  This is the current particular risk of using AI in real-world litigation.  But the lawyer who uses AI blindly also potentially harms others:

> The opposing party wastes time and money in exposing the deception. The Court's time is taken from other important endeavors. The client may be deprived of arguments based on authentic judicial precedents. There is potential harm to the reputation of judges and courts whose names are falsely invoked as authors of the bogus opinions and to the reputation of a party attributed with fictional conduct. It promotes cynicism about the legal profession and the American judicial system. And a future litigant may be tempted to defy a judicial ruling by disingenuously claiming doubt about its authenticity.

*Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 448–49 (S.D.N.Y. 2023) (Castel, J.).

Thus, a lawyer who wishes to use AI ethically must ensure that the legal propositions and authority generated are trustworthy. The lawyer has a duty to check all the cases and quotations for accuracy. Anything less is to abdicate one's duty, waste legal resources, and lower the public's respect for the legal profession and judicial proceedings.

## II.      Timeline of Events[2]

Beginning in March of 2025, James Martin Paul, Esq. ("Paul"), counsel for the Plaintiffs in the above-captioned cases and four other related cases filed in Florida courts (eight cases in total), repeatedly used AI to hallucinate cases and quotations in his filings. Indeed, Paul admitted to using generative AI and not checking its outputs in each of the eight related cases. [Transcript of June 17, 2025, Hearing ("H'g Tr.") at 8:18–25, 25:10–19].

On March 12, 2025, Paul filed a Complaint in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida ("the O'Shea Complaint"), Case No. CACE-25-003491, on behalf of Richard Patrick Michael O'Shea ("O'Shea").[3] In the O'Shea Complaint, Paul used AI to

---

[2]      The following timeline is a non-exhaustive recitation of counsel's uses of AI that generated hallucinated cases and quotations.

[3]      To be clear, this Court's Order refers to various cases in Florida state court only for background on Paul's actions. This Court's determination of sanctions, described below, is in response only to the actions of Paul before this Court. The Court is not sanctioning Paul for any actions taken in Florida state court.

generate at least two hallucinated cases.  [*Richard Patrick Michael O'Shea v. Promark Electronics, Inc., et al.*, Case No. CACE-25-003491, Complaint at 2 (Fla. 17th Cir. Ct.)].

On March 13, 2025, Paul filed a Complaint in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, Case No. CACE-25-003582, on behalf of Debt Dynamics, LLC ("the Debt Dynamics Complaint").  In the Debt Dynamics Complaint, Paul used AI to generate at least two hallucinated cases.  [*Debt Dynamics, LLC v. Promark Electronics, Inc., et al.*, Case No. CACE-25-003582, Complaint at 4 (Fla. 17th Cir. Ct.)].  In other filings in the Debt Dynamics case, he used AI to generate hallucinated cases, quotations, or parentheticals at least four other times, on May 6, 2025, and May 15, 2025.  [*See id.* Plaintiff's Response in Opposition to Defendant Cerebus Capital Management,  L.P.'s Motion to Dismiss, filed on May 6, 2025, at 2, 3; Plaintiff's Response in Opposition to Defendant ECI's Motion to Dismiss, filed on May 6, 2025, at 2, 3; Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss, filed on May 15, 2025, at 4; Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss and Motion to Strike, filed on May 15, 2025, at 2].

On April 1, 2025, Paul filed a Complaint in one of the above-captioned cases against Charles Gilstrap ("Gilstrap") and Peter Johansson in the Southern District of Florida ("the First Federal Case").  [*ByoPlanet International, LLC v. Peter Johansson and Charles Gilstrap*, Case No. 0:25-cv-60630, ECF No. 1 (S.D. Fla.)].  Then, on April 4, 2025, Paul filed a Complaint against Jarred Knecht ("Knecht") in the Southern District of Florida ("the Second Federal Case").  [*ByoPlanet International, LLC v. Jarred Knecht*, Case No. 0:25-cv-60646, ECF No. 1 (S.D. Fla.)].

On that same day, Defendant Gilstrap removed a case filed by Paul in Florida state court to the Southern District of Florida ("the Third Federal Case").  [*ByoPlanet International, LLC and Richard O'Shea v. Charles Gilstrap*, Case No. 0:25-cv-60647, ECF No. 1 (S.D. Fla.)].  Paul used AI to generate hallucinated cases and quotations in the Third Federal Case Complaint.  [*See id.* ECF No. 1-3].  As a

brief example of Paul's use of hallucinated cases, he cited "*Merrill Lynch v. Hagerty*, 808 So. 2d 1266 (Fla. 4th DCA 2002)" for the proposition that "Breach of contract occurs when a party fails to perform their obligations, leading to damages." [*Id.* at 3]. Like Justice Scalia's quote in *Liteky*, the *Merrill Lynch* case does not exist; rather, the citation from the Southern Reporter leads to *Roberts v. State*, 808 So. 2d 1266 (Fla. Dist. Ct. App. 2002). To this Court's knowledge, none of the authority cited in the Complaints filed by Paul in the First and Second Federal Cases were hallucinated; however, Paul admitted at the June 17, 2025 Show Cause Hearing that he used AI to draft the Complaints in the First, Second, and Third Federal Cases. [H'g Tr. at 15:8–16].

On April 14, 2025, Paul filed a Complaint on behalf of O'Shea against Jason Novak ("the Fourth Federal Case"). [*Richard Patrick Michael O'Shea v. Jason Novak*, Case No. 0:25-cv-60712, ECF No. 1]. The Court became aware of this case only after the June 17 Show Cause Hearing and was thus unable to inquire into whether Paul used AI in drafting the Complaint for the Fourth Federal Case. When asked at the hearing about other cases in which he used AI, Paul did not name this case, stating instead "off the top of [his] head" that there were "at least" five cases in which he used AI. [H'g Tr. at 14:7–10].

On April 25, 2025, Gilstrap moved to dismiss the Complaint in the Third Federal Case, claiming that Plaintiffs failed to correctly reference *any* case in the Complaint. [*ByoPlanet International, LLC and Richard O'Shea v. Charles Gilstrap*, Case No. 0:25-cv-60647, ECF No. 14]. <u>From this moment on, there can be no reasonable doubt that Paul was on notice that his use of AI was leading to hallucinated cases and quotations.</u> [*See* H'g Tr. at 9:21–10:2 (The Court: "[Y]ou don't deny that you were on notice on April 25th of misrepresentations of case law, correct?" Attorney Paul: "That is correct.")]. On May 5, 2025, in response to this Motion to dismiss, Paul cited *Smith v. JPMorgan Chase Bank, N.A.*, 2010 WL 2400084, at *2 (S.D. Fla. 2010) for the proposition that "Courts do not dismiss claims over mis-citations or citation errors." [*ByoPlanet International, LLC and Richard O'Shea v. Charles*

*Gilstrap*, Case No. 0:25-cv-60647, ECF No. 16 at 4].  However, the *Smith* case cited by Paul does not exist; in fact, the citation leads to *Hebert v. Plaquemine Caring, L.L.C.*, 2007-2243, 43 So. 3d 239 (La. App. 1 Cir. 6/16/10).  Paul also cited *Hood v. Tompkins*, 197 F. App'x 818, 819 (11th Cir. 2006), a real case, for the proposition that "Rule 11 sanctions require bad faith, not clerical error."  [*Id.*].  However, this quote does not appear anywhere in *Hood*, and the case does not discuss whether "clerical errors" are sufficient for Rule 11 sanctions, nor does it discuss "bad faith."  *See generally Hood*, 197 F. App'x 818.  On May 12, 2025, Gilstrap filed a reply brief, again noting Paul's numerous citations to hallucinated cases and quotations.  [*ByoPlanet International, LLC and Richard O'Shea v. Charles Gilstrap*, Case No. 0:25-cv-60647, ECF No. 19].

While all this was going on, on May 7, 2025, Paul filed an appeal to the Fourth District Court of Appeal in Florida in *ByoPlanet International, LLC v. Promark Electronics*, Case No. 4D25-0557 (Fla. Dist. Ct. App.).[4]  In that appeal, Paul again used AI to cite hallucinated cases.  [*Id.*, Initial Brief at 5, 11, 13, 15, 20 (citing *Castillo v. Deutsche Bank Nat'l Tr. Co.*, 274 So. 3d 1110 (Fla. 3d DCA 2019),[5] *Chowdhury v. Pomeroy*, 901 So. 2d 1005 (Fla. 4th DCA 2005), *Nabulsi v. Nabulsi*, 97 So. 3d 933, 937 (Fla. 4th DCA 2012), *Olson v. Olson*, 95 So. 3d 1150 (Fla. 4th DCA 2012), and *Perkins v. State*, 228 So. 3d 640 (Fla. 1st DCA 2017), which do not exist)].  Paul cited the same hallucinated cases in his Amended Initial Brief on May 8, 2025.  [*Id.*, Amended Initial Brief].

---

[4]     The Initial Brief lists the Appellant as ByoPlanet International, LLC while the Fourth District Court of Appeal website lists the Appellant as Richard Patrick Michael O'Shea.

[5]     *Castillo v. Deutsche Bank Nat'l Tr. Co.*, 302 So. 3d 337 (Fla. Dist. Ct. App. 2019), *Castillo v. Deutsche Bank Nat. Tr. Co.*, 89 So. 3d 1069 (Fla. Dist. Ct. App. 2012), and *Castillo v. Deutsche Bank Nat. Tr. Co.*, 57 So. 3d 965, 966 (Fla. Dist. Ct. App. 2011) are real cases, but they have nothing to do with Paul's statement that in *Castillo*, "the court held that knowingly false testimony from an agent or expert— when relied on by the trial court—constituted a fraud sufficient to reopen final judgments."  [*ByoPlanet International, LLC v. Promark Electronics*, Case No. 4D25-557, Initial Brief at 20].

On May 9, 2025, in another case in Florida circuit court, Paul filed a motion for protective order in which he cited three more hallucinated cases. [*Promark Electronics Inc. v. ByoPlanet International, LLC, et al.*, Case No. CACE-24-005937, Motion for Protective Order, filed on March 9, 2025, at 2–3 (Fla. 17th Cir. Ct.)]. In that same case one week later, Paul again used AI to generate hallucinated cases, quotations, and references, this time in a response to a motion for sanctions for O'Shea's failure to appear at his scheduled deposition. [*Id.*, Defendant Richard O'Shea's Response in Opposition to Plaintiff Promark Electronics Inc's Motion to Compel Deposition and for Sanctions, filed on May 16, 2025, at 3–4].

On May 14, 2025, in the Second Federal Case, Knecht filed a motion to dismiss the Complaint. [Second Federal Case, ECF No. 9]. The next day, on May 15, 2025, thirteen days before Plaintiff's response was due,[6] Paul filed a response which included numerous AI-generated false quotations and a hallucinated case. [*Id.*, ECF No. 10 (citing *Gracia v. Palm Beach Cnty.*, 112 So. 3d 771, 774 (Fla. 4th DCA 2013), which does not exist)]. On May 22, 2025, Knecht replied to Paul's response and noted the fabricated quotations and hallucinated case. [*Id.*, ECF No. 12].

On May 20, 2025, Gilstrap moved to dismiss the First Federal Case. Just two days later, on May 22, 2025, twelve days before Plaintiff's response was due, Paul filed a response in which he, again, cited hallucinated cases and quotations. [The First Federal Case, ECF No. 32 at 3 (citing *Kaplan v. Kaplan*, 963 So. 2d 933, 938 (Fla. 3d DCA 2007), which does not exist)].

On May 29, the same day this Court entered an Order to Show Cause requiring Paul to state whether he intentionally made misrepresentations to the Court, Paul filed a Motion to Reopen Case in which he cited a fabricated quote from a real case. [Fourth Federal Case, ECF No. 8 at 2 (citing

---

[6]     In the First Federal Case, in a Response to Order to Show Cause, Paul justified his actions by saying that this response "was prepared under time constrain[t]s[,]" a demonstrably false statement as Paul filed his response thirteen days before the deadline. [First Federal Case, ECF No. 36 at 2].

*Fla. Physician's Ins. Co. v. Ehlers*, 8 F.3d 780, 783 (11th Cir. 1993), for the proposition that Rule 60(b) of the Federal Rules of Civil Procedure should be "liberally construed to do substantial justice"; this quote does not appear in the case)].

Then, on June 10, 2025, <u>in response to an order to show cause regarding the use of AI-fabricated case citations,</u> Paul included fabricated quotations to two real cases.  [First Federal Case, ECF No. 38 at 2 (first citing *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017), for the quote that "[t]o exercise its inherent power to sanction, a court must find that the party acted in bad faith"—this quotation does not appear in the case; then citing *Carroll v. TheStreet.com, Inc.*, No. 11-CV-81173, 2014 WL 5474061, at *2 (S.D. Fla. July 10, 2014), for the proposition that the court declined to impose sanctions for incorrect citations where "there was no showing that the error was intentional or calculated to mislead"— this quotation does not appear in the case)].[7]

On June 17, 2025, this Court held a Show Cause Hearing on Paul's repeated use of AI to determine whether he intentionally made misrepresentations to the Court and acted in bad faith.  [*See* Second Federal Case, ECF Nos. 13, 18].  At the hearing, Paul admitted that he and a paralegal used "AI-generated drafting procedures[,]" specifically, ChatGPT.  [H'g Tr. at 5:12–17, 9:1–5].  Paul stated that he assigned his paralegal with drafting pleadings and briefs which he would "tweak." [*Id.* at 9:3–10].  Paul relied on the paralegal for checking the factual assertions and case law in the filings and assumed that they were proper, but he did not do any "due diligence" himself to check or correct the citations. [*Id.* at 9:10–15].  Paul stated plainly at the hearing:  "The majority of some of the citations

---

[7]      In that same response, Paul cited *Sciarretta v. Lincoln Nat'l Life Ins. Co.*, 778 F.3d 1205, 1211 (11th Cir. 2015) for the following quote:  "The key to unlocking a court's inherent power is a finding of bad faith."  [First Federal Case, ECF No. 38 at 2].  The actual quote appears on page 1212 and states:  "The key to unlocking that inherent power is a finding of bad faith."  *Sciarretta v. Lincoln Nat. Life Ins. Co.*, 778 F.3d 1205, 1212 (11th Cir. 2015).  While a discrepancy exists here, the Court does not conclude that this difference necessitates a finding that AI was used to generate this quotation.  The sanctions ordered herein are not based upon this citation.

. . . came from AI-generated software," and those citations were not checked.  [H'g Tr. at 12:4–7].
Paul claimed that the last time he used AI was "mid-May[,]" although the timeline of events excavated
by the Court belies that assertion.  [*Id.* at 10:18–21].

Paul repeatedly stated at the hearing that he took full accountability for his actions and that
they were not taken in bad faith, malicious, or intentional.  [*See, e.g.,* H'g Tr. at 25:16–19].  This Court
strongly disagrees; what happened here constitutes repeated, abusive, bad-faith conduct that cannot
be recognized as legitimate legal practice and must be deterred.

## LEGAL STANDARD

Federal district courts in the Southern District of Florida base their sanctions of an attorney
or a party on four sources:  (1) Rule 11 of the Federal Rules of Civil Procedure, (2) the Court's inherent
authority, (3) the Local Rules of the Southern District of Florida, and (4) 28 U.S.C § 1927.  *See Versant
Funding LLC v. Teras Breakbulk Ocean Navigation Enters., LLC*, No. 17-CV-81140, 2025 WL 1440351,
at *2–3 (S.D. Fla. May 20, 2025).

A. <u>Rule 11</u>

Courts should rely on the Federal Rules of Civil Procedure for sanctions before turning to
their inherent powers.  *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991).  Sanctions are reviewed
for abuse of discretion, but *sua sponte* Rule 11 sanctions are reviewed with "particular stringency."
*Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003); *see Regions Bank v. Kaplan*, No. 17-
15478, 2021 WL 4852268, at *8 (11th Cir. Oct. 19, 2021).

Rule 11(b)(2) of the Federal Rules of Civil Procedure states:

**Representations to the Court.**  By presenting to the court a pleading, written motion,
or other paper–whether by signing, filing, submitting, or later advocating it–an
attorney or unrepresented party certifies that to the best of the person's knowledge,
information, and belief, formed after an inquiry reasonable under the circumstances:

(2) the claims, defenses, and other legal contentions are warranted by existing
law or by a nonfrivolous argument for extending, modifying, or reversing
existing law or for establishing new law[.]

Fed. R. Civ. P. 11(b)(2).   On its own initiative, a court can impose an appropriate sanction on an attorney who violates Rule 11(b).   *See* Fed. R. Civ. P. 11(c)(1), (3).

"Rule 11 sanctions are properly assessed (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose." *Burgos v. Option One Mortg. Corp.*, 786 F. App'x 231, 233 (11th Cir. 2019) (cleaned up) (citing *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996)); *see also Gulisano v. Burlington, Inc.*, 34 F.4th 935, 942 (11th Cir. 2022).

"The initiating court must [also] employ (1) a 'show-cause' order to provide notice and an opportunity to be heard; and (2) a higher standard ('akin to contempt') than in the case of party-initiated sanctions." *Kaplan*, 331 F.3d at 1255.   The Eleventh Circuit has not elaborated on this "akin to contempt" standard and whether this stricter requirement for *sua sponte* Rule 11 necessitates a finding of subjective bad faith. *Deutsche Bank Nat'l Tr. Co. v. Thomason*, No. 2:24-CV-517-ECM, 2025 WL 552669, at *5 (M.D. Ala. Feb. 19, 2025).   "However, the Eleventh Circuit has upheld a district court's *sua sponte* imposition of Rule 11 sanctions where an attorney filed a 'factually and legally inaccurate' writ of execution where no judgment had been entered." *Id.* at *7 (citing *iParametrics, LLC v. Howe*, 522 F. App'x 737, 739 (11th Cir. 2013) (upholding district court's sanctioning of attorney under Rule 11 where the lawyer "could readily have discovered and corrected his pleadings, but instead his misrepresentations went undetected for over a year.")).

Sanctions ought to be effective deterrents that prevent repetition of the punished conduct. *See Regions Bank*, 2021 WL 4852268, at *8 (11th Cir. Oct. 19, 2021).   These sanctions are exceedingly flexible, and can include attorneys' fees, required educational courses, formal reprimands, apologies to the represented parties, reimbursement of plane tickets, or even community service. *Id.*; *see Johnson*

*v. 27th Ave. Caraf, Inc.*, 9 F.4th 1300, 1315 (11th Cir. 2021); *Rowe v. Gary*, 773 F. App'x 500, 503 (11th Cir. 2019); *Mata*, 678 F. Supp. 3d at 466.

B. <u>The Court's Inherent Powers</u>

"Federal courts possess certain 'inherent powers,' not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (cleaned up) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–631 (1962)). "To exercise its inherent power to impose sanctions, a court must find that the party acted in bad faith." *Versant*, 2025 WL 1440351 (citing *McDonald v. Cooper Tire & Rubber Co.*, 186 F. App'x. 930, 931 (11th Cir. 2006)). Courts employ a subjective bad-faith standard here. *See Purchasing Power, LLC*, 851 F.3d at 1224. A subjective bad-faith standard can be met if an attorney's conduct is so egregious that it could only be committed in bad faith. *See id.* at 1224–25. While recklessness alone cannot constitute bad faith, a filing that is both reckless and frivolous can constitute bad faith. *Id.* at 1223–25.

"Bad faith exists when the court finds that a fraud has been practiced upon it, or 'that the very temple of justice has been defiled,' or where a party or attorney knowingly or recklessly raises a frivolous argument, delays or disrupts the litigation, or hampers the enforcement of a court order." *Allapattah Servs., Inc. v. Exxon Corp*, 372 F. Supp. 2d 1344, 1373 (S.D. Fla. 2005) (Gold, J.) (citing *Chambers*, 501 U.S. at 46; *Malautea v. Suzuki Motor Co. Ltd.*, 987 F.2d 1536, 1545–46 (11th Cir. 1993)); *see also Quantum Communs. Corp. v. Star Broad., Inc.*, 473 F. Supp. 2d 1249, 1268–69 (S.D. Fla. 2007) (Martinez, J.). When the court uses its inherent powers to punish a party with attorneys' fees, there must be a direct causal link between the condemned conduct and the resulting costs. *Goodyear Tire & Rubber Co.*, 581 U.S. at 108. Sanctions under the Court's inherent powers are compensatory, not punitive. *Id.*

C.  The Local Rules of the Southern District of Florida

The Local Rules of the Southern District of Florida incorporate the Rules Regulating the

Florida Bar.  S.D. Fla. Local R. 6(2)(a); *see Versant Funding LLC*, 2025 WL 1440351, at *2.

The regulations of the Florida Bar provide that

> Every member of The Florida Bar and every lawyer of another state or foreign country
> who provides or offers to provide any legal services in this state is within the
> jurisdiction and subject to the disciplinary authority of this court and its agencies under
> this rule and is charged with notice and held to know the provisions of this rule and
> the standards of ethical and professional conduct prescribed by this court.

Fla. R. Reg. Fla. Bar 3-4.1.

Additionally, a lawyer should act with reasonable diligence and shall not engage in

misrepresentation to a court.  Fla. R. Reg. Fla. Bar 4-1.3, 4-3.3, and 4-8.4(c).  Rule 4-1.1 specifically

addresses artificial intelligence, requiring attorneys:

> To maintain the requisite knowledge and skill, a lawyer should keep abreast of changes
> in the law and its practice, engage in continuing study and education, including an
> understanding of the benefits and risks associated with the use of technology,
> including generative artificial intelligence, and comply with all continuing legal
> education requirements to which the lawyer is subject.

Fla. R. Reg. Fla. Bar 4-1.1, Comment, Maintaining Competence (emphasis added) (amended

Aug. 29, 2024, effective Oct. 28, 2024).

Sanctions pursuant to Local Rule 6(b)(2)(B) can include "(1) disbarment, (2) suspension,

(3) reprimand, (4) monetary sanctions, (5) removal from this Court's roster of attorneys eligible for

practice before this Court, or (6) any other sanction the Court may deem appropriate."  S.D. Fla. L.R.

6(b)(2)(B).

D.  28 U.S.C. § 1927

"[U]nder 28 U.S.C. § 1927, attorneys can face sanctions for engaging in practices that

unnecessarily delay or increase the complexity of the litigation."  *Versant Funding LLC*, 2025 WL

1440351, at *3.  Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United
> States or any Territory thereof who so multiplies the proceedings in any case
> unreasonably and vexatiously may be required by the court to satisfy personally the
> excess costs, expenses, and attorneys' fees reasonably incurred because of such
> conduct.

28 U.S.C. § 1927.  To justify a grant of attorney's fees under 28 U.S.C. § 1927, the Court must find

that "(1) the attorney engaged in unreasonable and vexatious conduct; (2) such conduct multiplied the

proceedings; and (3) the amount of the award does not exceed the costs, expenses, and attorney's fees

reasonably incurred due to such conduct." *Versant Funding LLC*, 2025 WL 1440351, at *3 (citing *Goode

v. Wild Wing Cafe*, 588 F. App'x 870, 874 (11th Cir. 2014)).

## DISCUSSION

Based on the facts set forth above, sanctions are warranted for Paul's behavior.  This Court

analyzes the four sources of the sanctions ordered here, in turn.

I.    <u>Rule 11</u>

"The purpose of Rule 11 sanctions is to reduce frivolous claims, defenses, or motions, and to

deter costly meritless maneuvers." *Kaplan*, 331 F.3d at 1255 (cleaned up).  The rule incorporates an

objective standard, and courts determine whether a reasonable attorney in like circumstances could

believe his actions were factually and legally justified.  *See id.*  Even though the imposition of Rule 11

sanctions does not strictly require a finding of bad faith, *Purchasing Power*, 851 F.3d at 1223 n.4, this

Court finds under an objective standard that Paul's conduct constitutes bad faith and that he filed

numerous motions and responses for an improper purpose, thus warranting sanctions.

"The filing of papers without taking the necessary care in their preparation is an abuse of the

judicial system that is subject to Rule 11 sanction." *Mata*, 678 F. Supp. 3d at 460 (cleaned up) (citing

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 398 (1990)).  "Rule 11 explicitly and unambiguously

imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a

pleading before it is signed." *Id.* (cleaned up).  The Honorable Xavier Rodriguez in the Western

District of Texas puts the matter plainly: "Attorneys using AI tools without checking on the accuracy of their output are responsible for the consequences of incorporating inaccurate information into their work product." Artificial Intelligence (AI) and the Practice of Law, 24 Sedona Conf. J. 783, 784 (2023).

This Court finds that attorney Paul engaged in bad faith conduct, and thus is deserving of sanctions under Rule 11, for two main reasons. First, despite being on notice that his use of AI resulted in hallucinated cases and quotations, Paul continued to make submissions to the Court using AI without checking the veracity of cases and citations submitted to the Court and his adversaries. Second, Paul admitted that he relied solely upon a paralegal—a non-lawyer—to draft filings to the Court and did not adequately review the paralegal's work before filing.

Paul was on notice that his use of AI resulted in hallucinated cases and quotations <u>on April 25, 2025,</u> and yet he submitted <u>seven</u> filings to this Court and other courts after this date that contained hallucinated cases and fabricated quotations, including in a response to an order to show cause regarding his use of AI to generate hallucinated cases and quotations. Even if Paul's initial use of AI was reasonable (and there is no basis to conclude that it was), his subsequent use of AI to generate hallucinated cases was intentional, constituting an improper purpose. *See O'Brien v. Flick*, No. 24-61529-CIV, 2025 WL 242924, at *6 (S.D. Fla. Jan. 10, 2025) (Damian, J.) (noting that filing a memorandum of law based in part on non-existent law is an improper purpose). Paul was aware that his use of AI was generating hallucinated quotations and decided to submit those filings to the Court regardless.

Additionally, Paul was not candid to the Court when confronted about his use of AI, stating that some of these documents were "prepared under time constraints," when he had nearly two more weeks before the deadline to submit his responses. [First Federal Case, ECF No. 36 at 2]. From an objective standard, Paul intentionally submitted AI-generated cases and quotations to the Court all while knowing that his use of AI produced hallucinated cases and quotations. Such actions are clearly

sanctionable. *See iParametrics*, 522 F. App'x at 739 ("When an attorney signs and presents pleadings to the district court, he certifies that he has conducted a reasonable inquiry, his claims are warranted by existing law, and his factual contentions have evidentiary support.") (cleaned up); *Mata*, 678 F. Supp. 3d at 464 (concluding that counsel violated Rule 11 by not reading a single case in his filing and "taking no other steps on his own to check whether any aspect of the assertions of law were warranted by existing law. . . . [S]igning and filing that affirmation after making no 'inquiry' was an act of subjective bad faith."); *see also Versant Funding Ltd. Liab. Co.*, 2025 WL 1440351, at *3–4.

Paul also stated that he relied on a paralegal—a non-lawyer—to draft submissions to the Court and failed to review the paralegal's work before Paul filed these documents, despite knowing that the paralegal's use of AI was leading to hallucinated cases and quotations.  "The drafting, preparing, or filing pleadings on behalf of another constitutes the practice of law and may not be engaged in by a nonlawyer." *Sanz v. Fernandez*, 633 F. Supp. 2d 1356, 1363 (S.D. Fla. 2009) (Cohn, J.) (citing *Fla. Bar v. We the People Forms & Serv. Ctr. of Sarasota, Inc.*, 883 So.2d 1280 (Fla. 2004)); *see Household Life Ins. Co. v. Lincoln*, No. 10-81174-CIV, 2011 WL 204614, at *2 (S.D. Fla. Jan. 20, 2011) ("Only a licensed lawyer may represent another person in court.") (citing *Guajardo v. Luna*, 432 F.2d 1324, 1324 (5th Cir. 1970)). The Eleventh Circuit does not "lightly regard the duty of an attorney to prepare a case properly and to give the issues full consideration before preparing pleadings." *Reese v. Herbert*, 527 F.3d 1253, 1264 (11th Cir. 2008) (cleaned up).  By relying exclusively on his paralegal to perform his core duties as an attorney, Paul abandoned his responsibilities as a member of the Florida Bar.

Simply put, Paul did not act as a reasonable attorney—not even close.  A reasonable attorney does not blindly rely on AI to generate filings.  A reasonable attorney, when made aware that his practices were leading to hallucinated cases and quotations, immediately changes course.  A reasonable attorney does not rely on a paralegal to draft a filing.  The conclusion that Paul failed to act as a reasonable attorney is unfortunate, but undeniable.  Paul acted in bad faith for an improper purpose.

Further, all the sanctions ordered in this case would deter improper attorney conduct.  While the use of AI by itself is not inherently suspect, wholesale reliance on AI without further inquiry or diligence by a lawyer is conduct which a court should deter, as lawyers must always conduct a reasonable inquiry.  Strong sanctions against the undiligent, unverified use of AI will deter lawyers from blindly relying on AI and on paralegals for drafting submissions to the Court.

## II.    The Court's Inherent Powers

For a court to sanction a party under its inherent powers, the court must find that the attorney acted in "subjective bad faith."  *Purchasing Power*, 851 F.3d at 1224.  "[T]his standard can be met if an attorney's conduct is so egregious that it could only be committed in bad faith."  *Id.* at 1224–25 (citing *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 767 (1980)); *see Harris v. Warden*, 498 F. App'x 962, 964 (11th Cir. 2012).  "The Supreme Court has held that sanctions such as dismissal are within a court's inherent power when a party's conduct evidences bad faith and an attempt to perpetrate a fraud on the court."  *O'Brien*, 2025 WL 242924, at *6 (cleaned up) (citing *Chambers*, 501 U.S. at 40–46).

Paul's use of hallucinated cases and quotations after he was on notice, and, importantly, his use of hallucinated cases and quotations *in response to (1) a motion to dismiss regarding his misrepresentations to the Court and (2) an order to show cause regarding hallucinated cases and quotations*, is so egregious that this Court finds that they were done in bad faith.  To paraphrase the Supreme Court:  this conduct defiles the temple of justice and brings disrepute to the practice of law.  *See Chambers*, 501 U.S. at 46.  Submitting hallucinated cases and quotations regarding whether his case should be dismissed and whether he should be sanctioned for his use of hallucinated quotations is crystal-clear evidence that Paul attempted to perpetrate a fraud on the Court and his adversaries.

Further, Paul's "bad faith citation of non-existent authorities . . . serve[s] only to foster extensive and needless satellite litigation"—the current controversy over his use of AI in four separate cases before this Court.  *O'Brien*, 2025 WL 242924, at *6 (quoting *Chambers*, 501 U.S. at 51).  For these

reasons, the Court finds specially that the sanction of dismissal is warranted under the Court's inherent powers.  The Court believes that dismissal is particularly appropriate in this case because, as Paul admitted, he used AI in generating various *Complaints*, which contain allegations that a District Court must (as a matter of law) take as true for purposes of evaluating a motion to dismiss under Rule 12 of the Federal Rules of Civil Procedure.  The Court is extremely concerned that underlying factual allegations may have been hallucinated or unverified as well, especially considering that Paul used AI in drafting the Complaints and could not assure the Court unequivocally at the hearing that they contain no fabricated allegations.  [*See* H'g Tr. at 13:1-8; 14:22–15:21].  Neither the Defendants nor the Court should be made to analyze and respond to factual allegations in Complaints that may have been wholly made up by generative AI—when the attorney's signature has been affixed to representations that are fake and worthless across so many filings (purporting to indicate the factual contentions have or will have evidentiary support).

III.    <u>Local Rules</u>

Paul did not act with reasonable diligence and engaged in obvious misrepresentation to the Court, thereby violating Florida Bar Regulation 4-1.1.  The regulations of the Florida bar state clearly that a lawyer must keep abreast of changes in the law and its practice, "including an understanding of the benefits and risks associated with the use of technology, including generative artificial intelligence." Fla. R. Reg. Fla. Bar 4-1.1, Comment, Maintaining Competence.  Beyond doubt, Paul did not understand the benefits and risks associated with generative AI, and this led to repeated bad-faith misrepresentations to the Court.  Thus, the Court is justified in sanctioning Paul under Southern District of Florida Local Rule 6(b)(2)(B).  The monetary sanctions, referral to the Florida Bar, and required notification to other courts and litigants of this Order are all authorized by Paul's violations of our Local Rules.

IV.     28 U.S.C. § 1927

The parties to these various cases and multiple judges of this Court have had to waste many hours responding to Paul's actions.  By repeatedly using AI to generate hallucinated cases and quotations, the parties and the Court have had to go through filings in all eight related cases to determine whether his citations were real or not, rather than focusing on the substance of his claims. The parties and the Court have spent significant resources on orders to show cause and attending and preparing for the June 17 hearing, which necessitated further briefing as additional facts came to light regarding Paul's misrepresentations.  Thus, it is undeniable that Paul's actions "unnecessarily delay[ed] or increase[d] the complexity of the litigation."  *Versant Funding LLC*, 2025 WL 1440351, at *3.  This Court accordingly finds that Paul engaged in unreasonable and vexatious conduct, which multiplied the proceedings.  *See id.* (citing *Goode*, 588 F. App'x at 874).  Sanctions, including the awarding of costs, expenses, and attorneys' fees incurred because of Paul's use of AI-generated hallucinated cases and fabricated quotations, are therefore warranted.

*     *     *

We live in an age when two things are happening simultaneously:  (1) institutions central to our constitutional republic are suffering from a loss of trust and confidence; and (2) technology has developed to a point that few could scarcely imagine even twenty years ago.  At all times, attorneys must ensure that their conduct, including their use of technology, never contributes to any diminishment of trust and confidence held by the public for the practice of law and judicial proceedings.  Here, Attorney Paul fell far below the standard expected, and because he did so, numerous parties and court personnel expended substantial resources getting to the bottom of his AI-fueled hallucinations.  Perhaps twenty years from now, AI will be flawless.  Whenever that day comes, that flawless brief will only have meaning because the signature at the bottom does.

19

## CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Pursuant to Rule 11 of the Federal Rules of Civil Procedure and this Court's inherent authority, the four cases before this Court (CASE NO. 0:25-cv-60630; CASE NO. 0:25-cv-60646; CASE NO. 0:25-cv-60647; and CASE NO. 0:25-cv-60712) are **DISMISSED without prejudice and without leave to amend.** Any pending motions in these four cases are **DENIED as moot.** All pending deadlines are **TERMINATED.** The Clerk of Court is directed to **CLOSE** these four cases. *See Johnson*, 9 F.4th at 1316 (upholding district court's order dismissing claims pursuant to Rule 11 and the court's inherent authority).

2. If the Plaintiffs choose to refile any of these cases, the Clerk of Court is directed to assign the cases, and any other cases arising from or related to them, to the undersigned.

3. Pursuant to Rule 11, this Court's inherent authority, the Southern District of Florida's Local Rules, and 28 U.S.C. § 1927, Attorney James Martin Paul is **ORDERED** to pay the attorneys' fees for Defendants' counsel in these four cases for all time spent responding to any filing in which generative AI was used to develop hallucinated cases and fabricated quotations.[8] The parties in the above-captioned cases shall promptly confer and attempt in good faith to determine and agree upon the reasonable attorneys' fees and costs that were incurred by Defendants' counsel in this regard. The parties shall then file Joint Notices **no later than July 24, 2025,** stating whether they have been able to agree upon the fees and costs to be paid, and if so, the specific amount agreed upon, and the payment schedule. The Court will then issue

---

[8] After a review of the Defendants' submissions of their attorneys' fees, the Court is skeptical that Defendants are entitled to all the fees claimed for each of these four cases. Some time spent by Defendants responding to the Plaintiffs' submissions would have been incurred in these matters whether or not Paul engaged in misrepresentations. Further, some research into Paul's actions could have been conducted by a paralegal or an associate, rather than a partner.

any further Order as deemed necessary.  If the parties and their counsel cannot agree on a reasonable amount of fees and costs or a payment schedule, they shall file separate notices on or before **July 25, 2025**, stating the nature of the dispute over the fees and costs (whether it involves the time incurred, hourly rate, or other issues) and their respective positions.  The Court will promptly determine the amount of the attorney's fees and costs to be paid to Defendants by Attorney James Martin Paul and issue any appropriate further orders.[9]  *See Goodyear Tire & Rubber Co.*, 581 U.S. at 108 (noting courts' "inherent sanctioning authority" to grant an award of attorneys' fees); *Johnson*, 9 F.4th at 1316.

4.  If Attorney James Martin Paul files any case in the Southern District of Florida <u>within the next two years of the date of this Order,</u> he must attach a copy of this Order to his Complaint.  *See Johnson*, 9 F.4th 1317 (finding no abuse of discretion where a district court ordered an attorney to include a copy of a sanctions order in any future complaint the attorney filed).

5.  Attorney James Martin Paul is **HEREBY REFERRED** to the Florida Bar for appropriate discipline.

> **DONE AND ORDERED** in the Southern District of Florida on July 15, 2025.

**DAVID S. LEIBOWITZ**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record

---

[9]    At the Order to Show Cause hearing, Paul represented that he would refund his clients' fees as to the time spent "moving forward on these . . . cases."  [H'g Tr. at 16:23–17:2].  Because of this representation, the Court does not order him to refund his clients.